Collection of cases. So Mr. Henderson or Mr. Hillis? Thank you, Your Honor. May it please the Court, I'm Peter Henderson on behalf of David Thompson. Mr. Hillis will represent the other three defendants. As to Mr. Thompson, I think really there's one main issue that we're concerned about, and that's the length of the term of supervised release. We also addressed the conditions somewhat, but I think that the the main error here was the district court relying on a misconception of his authority under Section 3583 to extend term of supervised release once imposed. And I think that the record reflects quite clearly that he struggled with the decision of how long to make this term, and based on his understanding that a term could be terminated early but not extended, he decided to be conservative and give the full life term. We think that that's just clearly a reliance on a factor that was inaccurate. It implicates Mr. Thompson's due process rights, and it's a procedural error. Our position is that in light of the numerous supervised release conditions cases that have been decided in this court since Mr. Thompson was sentenced back in 2014, I think January. Are you saying Thompson? Thompson, yeah. And our position is a remand just to reconsider the conditions in light of Siegel among the other cases, because the term of supervised release itself relied upon this misapprehension, that that would be appropriate and the court doesn't need to dive in too much into the conditions that we've challenged, because I think at any point Judge Reagan could modify those conditions and give a justification for them. So, unless there are questions. Is remand for resentencing what you're requesting? Right, as to the term of supervised release. Do all the conditions of supervised release have to be of the same length? They all run for the entire term of supervised release. Is that a rule? Well, that's a good... Because for some of these things you might think, no, you don't need 50 years of mental health counseling, something like that. I think that the court could fashion a rule to say, you know, in the first two years after your release you'll be subject to this treatment. I don't think there's anything in statute that would prevent the court from doing that. It just isn't the custom, though. Right, exactly, it's just not customary. Unless there are further questions. Gosh, you came a long way. Came a minute, didn't I? Now, this is the sex case, right? That's right. You don't question the offense, right? No, the conviction? I have to say, I find it very offense, right? So, has sex with a girl who is 16, which is age of consent in Indiana. Right. So, maybe I should ask the government, but I don't understand why this is treated as a sex offense. Well, and, you know, frankly, from our perspective, I would say that the sex offenses are very broad. Now, one of the offenses was transportation of child pornography, and that was due to the two images. But that seems so strange. I mean, we think of child pornography as a situation where you have a person who collects large quantities of child pornography and uploads them, shares them, and so on. And, of course, then a lot of these women are exposed, and so on. But, she made these pictures, and he's just carrying her pictures. Is there any suggestion that he was planning to distribute them? No, I think it was privately shared between the two parties. What's missing, in terms of this case? I mean, what else was there? Well, I think, I mean, I think really it's the circumstances of, and I think what the U.S. government saw was, and they can speak to this, I suppose, but they saw a relationship forming between a 23-year-old and a 14-year-old online that then evolved into a relationship when they were 25 and 16 that involved these explicit photographs and Skype conversations, etc. And the recent, I would say, laws, especially since the past maybe 15 years, have really broadened the scope, I think, of what can be prosecuted. And I think that the language of both of these statutes, he's liable. Well, there's another puzzle. It has to do with the family. So, her father was very indignant about this. Right. But, apparently, her grandparents had custody of her. Right. So, what is that about? I'm not sure about that part of the puzzle. Because if the grandparents had custody, that suggests the father, you know, wasn't supposed to be involved with her. Right, and I'm not sure about that part of the puzzle. There are a lot of questions. Let me ask you, now, one of these, you do object, don't you, to this business about the restriction that he can't have any contact with someone under 18. Right. And you mentioned, you know, he can't go to the grocery store lest a 17-year-old cashier ring up his produce. Right. Has the government offered any of the probation service any interpretation of this that would make it more reasonable? Not that I'm aware of. I think, probably, the response is, well, probation is going to be reasonable in interpreting that, and they're not going to revoke based on incidental contact. But, that's not what the condition says. And I think the main problem with these conditions is that it really delegates a great deal of authority to the probation department, instead of the court, in interpreting these very, very broad conditions. Well, it still has to come back to the court, though, right? Well, certainly. And the other problem, apart from that delegation, is that it doesn't put the defendant on probation. Over the years, Lisa, I've been in the system, much concern about the conditions that are so vague that nobody had noticed. I didn't know I wasn't supposed to do that, and that's never really been a big issue. Your experience doesn't show that, does it, in the past? Well, I suppose my experience, not on this particular condition, but we do see people who come in and get revoked because, primarily, just practically speaking, what will happen is that the relationship between the defendant and probation has deteriorated. And so, you know, the defendant... In the federal system or state system? In the federal system, I'm talking about. And so, probation, in seeking to revoke the terms of supervised release, will go through the conditions and see, okay, which ones can we find evidence that he's violated? And that can lead to a prison sentence, and I think this condition, in particular, probation would very easily be able to do that. It's a liability, and it really does a disservice, I think, to Mr. Thompson, because there may be concerns about contacting minors. But the problem is, if we start down this slippery slope, we're going to have to define these conditions in such tight terms that it becomes an effort that the judges want to bother with. Right. I think we're at maybe a moment right now in this circuit where we've had many, many years, since 1984, where these conditions have been imposed and there's really not been any questions. I think Mr. Hillis will the wording is. Once that's done, then it's done. And I think once this court finds conditions that meet the requirements of the law, then that'll be fine. I don't think it's a terribly onerous effort, but I think that the case law that has come out, especially this year, suggests that these conditions are not appropriate, need to be reworked. I guess there's two ways of looking at it. One is, prior to this time, everybody had a practical and sense look at it, and so things weren't brought that didn't make any sense by the probation department. Right. And there wasn't anything wrong with that. Right. No, I appreciate that. So I'll let Mr. Hillis speak. Okay, thank you, Mr. Henderson. Mr. Hillis, would you prefer, let me ask the government, would you prefer to in each case, or wait till the end? Okay, well, that's fine. We'll do it that way then. May it please the court. My name is Daniel Hillis. I'm with the Federal Public Defender's Office, and I represent Mr. Blount, Mr. Ortiz, and Mr. Bates. All three men raised No, sir, we're just appellate counsel for all four individuals. As Judge Posner mentioned about Indiana, and I don't think Indiana was involved in this case. It was Ohio, not Indiana, but that's all right. I'll do it for the government. All three of my clients raised challenges to conditions of supervised release. This is Blount we're talking about? Blount, Bates, and Ortiz, sir. And because of the are not contained in the PSR, my clients lack notice. So the standard of review is abuse of discretion except with constitutional challenges, which should be subject to de novo review. And what process would you ideally like to see the district courts implement and determine appropriate conditions? As opposed to the best practice, what do you think is constitutionally required? Notice, findings. Notice. And findings. Yes, findings for the conditions. Well, you could say they're getting fast. I'm not certain that they are, Your Honor. I mean... And I would say they're not. We have had for a number of years now, as Mr. Henderson alluded to, a practice where it's very comfortably done at the conclusion of the sentencing hearing. We adopt the standard conditions of supervised release. The judge adopts those and imposes these additional conditions. I've never heard a district court make any reference to 3583D. And that didn't happen in these three cases. Nor have I ever heard a court consider 3553A factors in relation to the imposition of the condition of supervised release or the length of the supervision. So I don't believe that we've ever had a practice where there have been findings. And so far as what the practice should be, there should be inclusion of the relevant terms in the PSR. That's consistent with Rule 32D1. There should also be, in that domain, consistent with United States Sentencing Guidelines, Section 5D, factors that the probation office thinks is relevant. So between the statute and the guidelines, there are provisions that say to set these things forth in the PSR. That's not being done. I got more of an idea that your challenges seem to be based on, you know, these far-reaching interpretations of provisions. It's a two-fronted attack, Your Honor. The lack of notice, which we think is a procedural error that requires remand under Gaul. But then we also have the, and I understand Gaul is about the length of the sentence, not about the condition of supervised release. But it did say to consider 3553A factors, and that wasn't done with respect to supervised release conditions. But we also then have the additional challenges on the Fourth Amendment, Fifth Amendment, First Amendment, the over-breath, the vagueness, things of that nature, which I will get to shortly. But I did want to take a moment to spend some time on the... Let me back up just one minute, and you can answer this question. So apart from either the guidelines or statutory, you don't think the court has any inherent authority to set conditions? No, Your Honor, the court does. And 3583D allows that. It should be with consideration to the pertinent policy statements and the guidelines. But there have to, again, there has to be notice, there have to be findings. Right. But I mean, so the court can tailor whatever conditions they want, and even though they may not be found, those conditions may not be found in the guidelines or vice versa instead. So long as they're constitutional. Would it lead to hearings? We have a sentencing hearing already. No, no, no. But just a hearing on contested... Those mechanisms are already in place. We have the provisions that require the notice, and that's not being done. We have the sentencing hearing, which is an opportunity, as Your Honor is explaining. But we also then have a post-sentencing proceeding where once an additional modification of the condition of supervised release, they may not have counsel there. I'm not talking about hearings then. I'm talking about, you know, more hearings after the sentence is pronounced and then into, you know, the areas of supervised release. I wouldn't see an additional hearing after the sentencing unless there was a... I thought your idea was that the supervised release conditions are an integral part of sentencing, and so when the judge is delivering the sentence, he should explain why he's imposing these conditions. Yes. He doesn't have to give a speech about each one, but I guess the problem has been the judges frequently will simply list the conditions that he's imposing, even if they weren't in the pre-sentence report at all. Yes, and I think that that is a deficiency, and it's inconsistent with the statutory requirements. I think that defendants are reluctant sometimes to raise these issues because they are angling for a lower sentence. And when they then have to go into these things that judges consider minutiae, they risk aggravating the judge. But on the back side of this, we have one in three individuals, and I believe this was one in three individuals are revoked, supervised release. They go back in. They have sometimes short sentences. Did you say one in three? I believe it was one in three is what that referred to. And if I'm wrong, I apologize. I'm going from memory on this. But in any event, they get short sentences. They have limited procedural protections because due process isn't afforded to them in the same fashion, and so we are there on a lower standard of proof. All sorts of things that happen to them on the back end that they're in peril of, and so they should be contesting these things now, but it hasn't been done in the past. And those are some of our concerns, and that's why it's appropriate to raise these concerns now as opposed to waiting until later. And that relationship that Mr. Henderson referred to, the relationship between the probation officers and the individuals, when you start getting testy with your probation officers, bad things are going to happen to you. The contrary thing to that is that the judge says, well, the heck with this short sentence and condition. I'll just give them 10 years instead of five. I think that would be ill-advised, especially given the Supreme Court's decision in the United States versus Johnson in 2000 that supervised release is supposed to serve primarily a rehabilitative purpose, and so if we're going to say that we're going to give you a longer sentence now because you might challenge... Well, you're not going to say that, but... You also shouldn't do it. But I agree, Your Honor. I think that that's the risk that these individuals are at when they're trying to defend themselves, this curious position that they're in because of the length of the sentence that they do and then the length of the supervised release that follows. And sometimes it has very burdensome conditions that are... The expiration may never happen. It could be a lifetime supervised release with all the conditions imposed. Isn't part of the problem that... Now, his sentence was, what, 22 1⁄2 years, his prison sentence? For Mr. Blount? Yeah. Yes, I believe so. So isn't a defendant likely to say to his lawyer, I don't really care about what happens in 22 1⁄2 years. It's just too... It's related to this point about I don't want to look like a nitpicker arguing with the judge over what I have to do in 22 1⁄2 years. I think the better course is not to impose all of the conditions in the way they're being done. Leave it for a subsequent date for modification. When you have a better developed history of the individual's time in his incarceration as well as how he's doing on supervised release, add the conditions then as opposed to putting them all up front, which makes little sense. Especially, we have a pre-printed form. We have 23 conditions that could be imposed. We are typically seeing 13 of those imposed in every case, regardless of what the offense is or what the individual's history and characteristics are. There's no consideration of the 3553A factors. But those are just procedural issues. I'd like to advance now to the Fourth Amendment and Fifth Amendment issues and then proceed if I have time to the various vagueness challenges. We're concerned on the Fourth Amendment issue that the standard condition, which is included in all the judgment forms, allows for probation officers to make home visits. It doesn't have any requirement that the nature of the search be based on... And it is a search. It's a home visit. That's a nice term for it. But somebody's showing up in their house uninvited. You have then a reasonableness issue. And the Fourth Amendment is still applicable to these individuals, though they've been convicted. So it should be based on reasonable suspicion. It should be done in a reasonable manner. And yet the condition doesn't have any of those requirements. And that's inconsistent with the Fourth Amendment protections. So you're... And it may be the case, if you have the case law that supports it, people on supervised release do have the full panoply of constitutional rights with regard to search and seizure? I don't believe they have the full panoply. So in the Fourth Amendment in particular, they have a diminished expectation of privacy by virtue of their previous conviction. But they still have some Fourth Amendment protection. In the Fourth Amendment, the hallmark is reasonableness, Pennsylvania versus MIMS. And we don't have any requirement that the condition be reasonable. There's no tie to reasonableness. And it needs to be done. We have a Fifth Amendment issue as well. We have individuals who have Fifth Amendment protection. And there's no... I mean, that's the... You want the random and non-notification to make them work. Otherwise, you know, you can plan, yeah, I'll be there next Tuesday. Well, things are going to be different. I understand law enforcement's objectives on this. However... But that's just law enforcement probation. They're part of law enforcement in my view, Your Honor. Well, actually, they're part of the court. In any event, the... They're also part of law enforcement. Thank you. The Fourth Amendment still applies. And so I understand that law enforcement would always like the element of surprise in all cases. But we still have them get warrants in other cases. And at a minimum, there has to be a reasonableness aspect  We have a Fifth Amendment issue as well. And I do not believe that the government has correctly read or attempted to apply Minnesota v. Murphy in this case or the other authority that they rely on. An individual has a Fifth Amendment right against self-incrimination. And when you have standard conditions 3 and 11 in these cases that require individuals to give information about themselves, it's incriminatory and it's compulsory, by the way. So if you don't... Do you think they're entitled to Miranda warnings? I don't know that Miranda warnings would be necessary. I think a CASTIGAR limitation is the more appropriate route. Oh, what? I'm sorry. A CASTIGAR limitation. So if they really want a full and frank exchange between the individuals, the defendants, and the probation officers, have a CASTIGAR limitation. Use and derivative use immunity. You'll have your full and frank exchange if they have the ability to otherwise prosecute for some sort of law enforcement... I'm sorry, I missed that word. A what? Full and frank exchange... No, the case. Oh, CASTIGAR, I'm sorry. The CASTIGAR. CASTIGAR versus... Oh, CASTIGAR, okay. I'm sorry. They have other law enforcement avenues to prosecute individuals, especially for substantive offenses, that you shouldn't have somebody who is required at penalty of revocation to go back in and do jail time that you answer truthfully the questions that are posed by your probation officer, that you follow the instructions, that you report law enforcement contact. We have NCIC, which is a tool available for law enforcement that notifies probation officers, or at least it's available for their checks if they want to do it on a routine basis, but that information is there in a clearinghouse fashion for probation officers. You shouldn't have individuals who are forced to give the information over to their probation officers. Isn't it rather uncommon for a probation officer to go to a person's house? My impression is the probation service is understaffed, and I don't know where they get the time to... I don't know if they do. I would like to eliminate the possibility that it happens, and so if it does, my clients will be out of luck. The condition was there, it allowed for it. They have nothing really to grieve, and I'd like to avoid that possibility. Briefly, I'll stand on my arguments in my brief as to the vagueness and over-breath issues, and I reserve the balance of my time for rebuttal. Well, do you want to talk about your next cases? Are you doing the other two cases? Yes, I'm sorry. I was trying to address them all globally. All of those concerns were present in all three cases. Yeah, those things are all the same. Right, but are there particular issues in the other cases you want to discuss? The Blount case has a challenge to the application of a particular guideline enhancement, and I'll stand on my brief for that. The other two cases, the remaining issues are all supervised. Okay, well, thank you very much, Mr. Thomas. And so, Ms. Garrison? Good morning, Your Honors. Thank you. May it please the Court. I'm here just to respond to the comments made by Mr. Henderson in the Southern Illinois case. First, I'd like to start out with answering some of the questions the Court had about the nature of the charge and the offense and then get back into the issues of the terms and conditions of supervision. The Southern Illinois case, Your Honors, is one about waiver, and we think it's an important opportunity for the Court to provide some guidance in that area. As Judge Kainey realized, Southern Ohio had a role in this particular prosecution. That is where a 16-year-old girl was reported missing by her family. She was a troubled girl for privacy reasons. There's not an awful lot of elaboration on that in the record. What about the parents and grandparents? The child was having suicidal ideation because there was a plan to put her in foster care. She had, unbeknownst to anyone, been for over two years having an online relationship with this defendant and was very troubled, out of control. I think the family was at wit's end. And the grandparents at one point were trying to raise her. So the investigation started in Southern Ohio when this child went missing. Fortuitously, she was found in Southern Illinois during a routine traffic stop with this defendant. He had in his possession pornographic images she took of herself. The full panoply of charges in Southern Ohio first included two counts of production of child pornography, the theory being this child was, over a period of time, coerced and encouraged to send these photos. There was a charge of online enticement for the ages that she was from 14 to 16, engaged in sexual conversation with this adult man. He was also charged in Southern Ohio with transporting her for sexual purposes. She was of the age of consent in Indiana, not in Ohio, not in Illinois. Southern Illinois proceeded on the transportation of child pornography charge. Ultimately, in Ohio, he was convicted and pled to the charge that he traveled in interstate commerce for sex with this child. But this is just 15 years? Well, the court had discretion to impose a lesser sentence. By the time charges were selectively dismissed and pled to, the highest mandatory minimum was five, five years. The court did consider the guideline range in this case, which was higher on the transportation charge than for any other offense, and did depart downward based upon the defendant's criminal history category of three, overstating the seriousness of his past. So the court had discretion, did view this as a very serious case. If the court viewed it as less serious, legally he could have imposed five years, but did not. Now, if I may turn to the supervised release issues, we're very bothered by Mr. Henderson's... I mean, I know it isn't an issue, but the sentence seems ridiculous. I mean, look, the number of teenagers involved in this stuff is legion. Well, Your Honor, this started... I don't know what percentage of 14-year-old girls have had sex, but it's a very high percentage. You know, it's like, I think it's 17% or something, right? Well... And this isn't really child pornography, right? Child pornography is collecting all this stuff and uploading it and exchanging it. That's a whole strange, you know, industry, which is harmful to the girls. Well, Your Honor... This is just private, you know, pornographic pictures, which I'm sure a lot of people take. We appreciate that Your Honor might have imposed a different sentence, but if I might turn to the issues of supervised release, we're bothered by the idea that Mr. Henderson has asked for a full resentencing in this case. And the Southern Illinois case is different than the other three cases, in that Judge Reagan did give written notice of intention to impose special conditions and standard conditions of supervised release. That was his practice, and it was his practice going back as far as June of 2012. There was a directive that any objections were due at the time the PSR is filed. Defense counsel in this case had notice of these conditions more than three months before sentencing. When he said he would give... They knew what those conditions would be? There was... And I see my time has run.  No, go ahead. Thank you, Your Honor. The conditions were spelled out. All the standard conditions were checked, and there were some special conditions that were set forth. Checked in the sense of... As you would with the PSR, just as you would file objections to the PSR. So there was more than three months advance notice in this case. I am thinking of imposing a condition that you shall have no contact with minors. I am thinking of imposing mental health treatment, sex offender treatment. No objection was filed. A sentencing memorandum was filed affirmatively stating that these were appropriate conditions. At sentencing, in context of arguing for a below-guideline sentence, defense counsel indicated that these conditions would serve to protect the public. He used them to his strategic advantage. This is an issue of waiver. So the sentence... What was the total sentence in this case? The total sentence, Your Honor, was 180 months on the Southern Ohio case. That was a downward departure on a Type C plea agreement. In the Southern Illinois case, 210 months all to run concurrently. How about in years? You would think I'd know how to divide by 12 by now. The defendant urged a 15-year sentence at 180. He received more than that. But the idea would be... As I understand it, your argument here with regard to the defendant is give me less than 15 because I'll follow these conditions. Because you're setting up these conditions, such as the treatment. So we really think that this is an issue of waiver. Conditions being used to strategic advantage. And it makes it very different than the Northern Illinois cases. And the idea of a full redo here means sentencing hearings, henceforth, or dress rehearsals. But some of these conditions are very vague. Well, Your Honor, they weren't objected to. And another thing Judge Reagan... Well, judges have a certain responsibility. They can't just give crazy conditions just because the lawyer hasn't objected. Your Honor, in this case... This business of contact with minors, for example. Well, in this case, I would point out that... Well, what about contact with minors? Contact with minors. What will happen when this defendant is released, within 72 hours, he'll report to a probation office. That's likely going to be in the Ninth Circuit, where he is from and where he's expected to return to. A probation officer will explain these terms to him That is not very satisfactory. In other words, you have a vague sentence, and then you have a probation officer decide what it means. So the probation officer does the sentence, right? The probation officer, in this case, Your Honor... The probation officer makes it up, right? Because there's nothing in the condition itself which explains what contact with a minor means. Your Honor, the probation officer in this case, who will likely be in the Ninth Circuit, is an officer of the court. He effectuates the court... He is not a judge. And he is not empowered to sentence. He will likely consult with his judge about the unfamiliar... Oh, come on. That isn't right. Likely consult with a judge. Sure he would. Look, the judge is supposed to issue the sentence in a way that's intelligible. That's a clear sentence. Not say, I'm sentencing you to... I don't know, some stuff. The probation officer will tell you what I mean. That's not... That's very unprofessional. Well, what I meant to say, Your Honor, is I believe a high likelihood a probation officer would seek to modify the terms of the condition... Look, this is inexcusable. In my mind, what you're saying is completely inexcusable. You are saying a judge can give a hopelessly vague sentence and then just leave it to a probation officer to define it in a sensible way. Because he's an... Why not do it with a law clerk, right? Say, I'm sentencing... No contact with minors. If you have a problem with that, ask my law clerk. I can't be bothered. I'm a judge. I can't be bothered with such trivia. That's what you're saying. I'm not saying that, Your Honor. You certainly are saying that. You are saying a judge can give an extremely ambiguous sentence and leave it to a probation officer to define the sentence. I don't view this as being ambiguous, and we've cited cases that recognize... Contact with a minor is extremely ambiguous because it could mean, in their example, you check out and the cashier is under 18 and you exchange a few pleasantries, give him money. That's contact with a minor. That would not lead to any adverse consequence. But you agree it's contact with a minor.  How do you know? It's incidental contact. How do you know? That's not in the sentence. I think it's common sense. It's not in the sentence. I think... Why are you fighting this? Why do you object to have judges issue precise sentences? When they say 20 years, you know what 20 years is. When they say contact with a minor, you don't know what it means. What process would you ideally like to see the district court implement? Your Honor, I think the process that Judge Reagan used in this case, which has been expanded upon in our district since, is a good process. Notice is given in advance. There is an opportunity to object. If there's not an objection, then the conditions are imposed. We don't have any outlandish conditions. Yes, contact with a minor is an outlandish condition.  and I've tried to answer Judge Roebner's question about the process. I'm deeply concerned about cutting into my colleague. No, we'll keep you here forever, as you can see. That's fine. I just want my colleague to have her... I'd be deeply concerned about sitting down. No, we appreciate the court's systemic concerns about these cases. What are you going to do about it? I can tell you that our probation office does now use a written list of proposed conditions that is served contemporaneously with the pre-sentence report. Including contact with a minor. That's correct. And if anyone finds that vague or confusing... What do you mean if anyone finds that vague? You admit it's vague. It requires clarification by the probation officer. I think many of these conditions would require some guidance from the probation officer. Why can't the conditions be made clear? They can be, Your Honor. We now have... By the judge. Why can't the judge say, no, no erotic, no sexual contact with minors? The procedure that exists here, even in this case, counsel could have objected and proposed alternative language. Or there could have been a dialogue at the sentencing hearing. There was not. Perhaps the defendant felt he understood the condition. I'm happy to yield the podium. Thank you, Your Honor. Thank you very much, Ms. Garrison. Ms. Bonamici? May I please report, counsel? Good morning. It's still morning, right? The... With respect to your question, Judge Posner, I'll just begin by talking about that. The question is, what is being done about it? And in answer to your question, the Thompson case provides you with a very good illustration of one of the things that's being done. In that case, the court is using a form with check boxes that include all of the special and the standard conditions of release. And the judge is permitted to check all of the conditions that he or she is considering imposing. And that notice is given to the defendant before sentencing. That notice is something that you have identified as a best practice. And it is something that is becoming a practice in most places. Although, we would contest the legal propositions that that notice is required. In fact, this court decided that it was not required in cases other than those involving conditions that are out of the ordinary. And that decision was consistent with the Supreme Court's decision in New Jersey. So, I don't think there's a legal requirement for it, but it certainly is a good practice in terms of getting all of the objections to the surface and getting a record that's full before it comes to this court with respect to the specific reasons for the wording that's used in any of these conditions. You know, I was interested because you oppose the Kastiger limitation. But, I mean, would you object, for instance, to including language that states that a defendant can exercise his Fifth Amendment right to refuse to answer without that constituting a violation of the condition? Well, it's probably not best to try and craft the condition as I stand here. But, I would say that a better solution might be if this is considered to be a problem. And I would note that the problem of incriminating information is a pretty narrow piece of the communications that go on between probation officer and defendant. I mean, it's not that every single communication they have is potentially going to result in criminal prosecution or revocation. Quite to the contrary, it works the opposite way. But, a possible solution might be to say that all information provided to the probation officer must be truthful. Yes, because he knows if he's not truthful, he's going to suffer for it. Right. So, that little change doesn't require him to answer questions as much as it says you're not to lie, which is a big part of what that provision is intended to deal with. The concept here is, with respect to that particular provision, is that the defendant is on supervision and the probation officer is tasked with supervising him. And it is important that there be a dialogue between the two of them. And it is also important that the defendant on supervision understands that the court requires the defendant to cooperate with the probation officer. That's an important part of the probation, of what makes the probation officer, gives the probation officer the authority that the probation officer needs to have daily supervision. But do you think the defendant has a Fifth Amendment right or Fourth Amendment right when he's being interviewed or searched? I think that, start with the Fourth. I think the courts have said that the defendant has a reduced set of rights and under the Fourth Amendment, has a reduced, minimized expectation of privacy. I think that the courts have held, this court has not directly addressed this particular topic, but the courts have held that the minimally invasive home visit is certainly not something that is prohibited by the Fourth Amendment. The defendant does not have a reasonable expectation of privacy that would extend to forbidding the probation officer from making a brief home visit. A home visit is not a search. It is distinguished in the statute. Searches and home visits are distinguished in the statute. They're distinguished in the guidelines. They're not the same thing. And so I would say that a home visit is not a problem at all. The statute allows for searches, warrantless searches, in the context of a minimal number of offenses. In fact, I don't know that it's set forth in the statute other than the context of sex offenses. So the child exploitation cases, those kind of cases, those cases are permitted by statute, or in those cases, the judge is permitted by statute to impose a condition requiring searches. Home visits are something completely different from that. And they are a fundamental part of probation supervisory work, not because they go to each person's house frequently, as Your Honor mentioned. They are understaffed. There are problems. But they do generally try to visit the home at the beginning of the period of supervision, and they do have a practice of making unannounced visits, or at least being open to unannounced visits, which is a practice that greatly enhances the deterrence value of supervision. And so that's not a problem at all. And I would also state that home visits are an important part of supervision in almost all cases. It's not something where case-specific facts should be required. It's something that is an important piece and is not a violation of the defendant's rights on suspended supervision. With respect to the Fifth Amendment, I would say that, as Judge Keeney pointed out earlier, you haven't seen a lot of cases up here where people are complaining about having been threatened based on their invocation of their rights. And, in fact, it's not a common issue, in part because, as I said, the communications between the supervisee and the probation officer are not limited to criminal activity and infractions that could result in statements that could be incriminating. With respect to having to identify contacts with law enforcement, which is something that the defense lumps into this discussion, I mean, that is not incriminating in itself at all. I mean, if you've stopped by law enforcement and you tell your probation officer you've been stopped by law enforcement, as the defense points out, probation office does have access to NCIC. So it's not really... What it actually does is it gives the defendant an opportunity to be up front and deal with it in a way that might actually mitigate problems down the line. It's true that when a defendant admits to conduct, it makes the process, it streamlines the process of, particularly in appeals, this court has found on a couple of occasions, that there was no factual problem with the revocation because the defendant admitted to the conduct. So it's not to say that it's meaningless, but the defendant does, in this context, have the right to invoke his right to remain silent, and that right is respected. And it's not... A defendant on supervision is not in custody, and I don't think that Miranda warnings are appropriate, and I don't think that a CASIGAR immunity system would in any way be helpful to the program of supervision, which, you know, is a difficult problem to begin with. Now, one of the provisions says, defendant shall answer truthfully all inquiries by the probation officer. Right. Doesn't that imply that if he asks you, have you completed any crimes lately, you have to say yes? Well... If you have, in which event, you would be forfeiting your Fifth Amendment rights? I think in a vacuum you can make that argument, but I think, realistically, the cases that have come before the courts relating to, in particular, the polygraph situation, where a defendant has to... You know, that treatment program that requires that the defendant make incriminating statements about his prior illegal conduct. Those cases make it pretty clear that defendants are not misled by that, that defendants are invoking their rights when they want to, when they need to, and so I would say that that is... Well, why hasn't it said that? You know, a lot of people don't know... As I say, I would offer that it would be better and less damaging to the relationship between the probation officer and the supervised defendant. Now, the next one, defendant shall support his or her dependents and meet other family responsibilities. What's that for? Why is that the business of the government? As we said in our brief, the judicial conference and the judicial policy that was issued by the judicial conference noted that that type of conduct is pro-social conduct that is correlated with... The mafia was famous for its family solidarity. Well, that's... Supporting their dependents on the basis of their criminal revenues. Well, that's true, but... So you're sending a mixed message. You don't say, shall support his or her dependents if you have lawful resources. Just say, shall support, commit crimes. Well, there's another condition that prohibits crime. Why is that the business of the government? Well, I think this is an important thing to focus on because the whole supervision system is designed to assist the defendant in rehabilitation and reintegration into the community. And has anybody studied the efficacy of... Is there less recidivism now than before there were conditions of supervised release? I can't tell you the answer to that. Well, that's kind of critical. We've had this for the last 30 years. And are you saying we have no idea whether all this stuff has any beneficial effect? Well, I think that's something that Congress should take a look at, for sure. Oh, Congress take a look at. Well, I mean, this is a statute, right? Why don't you... Where is this... These types of suggestions that Judge Posner is referring to and others. How does that relate to the Judicial Conference and then the administrative office that oversees probation? Well, as I understand it, the Judicial Conference developed the policies that underlie the policy statement that we refer to in the brief, policies that underlie the directions given to probation in conducting supervision. They also were the ones that developed the forms that we used... Who was they? The Judicial Conference, developed the forms and the language. The policy that... The statutes, actually, with respect to all of the conditions that we've talked about,  as well as in the guidelines, pretty much in the wording that the judges in our district are using. They're not mandatory, except, you know, a little handful of them. No, they're not, but it's not as though the judges in our district and in the circuit are just making stuff up. I mean, this wording was crafted by the Judicial Conference and is used, you know, now based on the recommendation, the policy statement and the guidelines. With regard to the support of dependents, you'd think the judge would make an evaluation. Is this person actually... One of these defendants doesn't have a family? We agree with that, Judge, and we understand... I mean, this court has identified a problem in the practice of the district courts, the prosecutors, the defense, everybody, that's been going on for some time, and in response, and that is the failure to provide reasons for the imposition of these conditions and also failure to consider the wording, you know, afresh from time to time. What's clear from the Thompson case is that the district courts, prosecutors, and defense lawyers have responded to those issues that this court has raised, have responded, are responding on an ongoing basis. We have judges and districts crafting disclosure statements to go with the PSRs. We have judges every day crafting new language that meets, you know, in an attempt to meet some of the concerns that this court has raised and also concerns that they've now thought about giving more thought to these issues. I know our office is assisting and we are proposing conditions... Well, there's a judicial conference committee that oversees probation and makes recommendations. There's a judicial conference committee that oversees the federal defenders and makes recommendations for them. So there is a... You're not just operating district by district or judge by judge, although you may. I mean, the judge usually can disregard it, but there is a sort of a uniformity, somewhat of a uniformity with regard to the house. That's correct, and that can be useful, but I think this court's recent cases suggest that it can also be problematic if it's taken too far, and so this has been an opportunity to, you know, review these issues. But as far as these three cases... The fourth one is a waiver, but as far as these three cases go, we would assert that clearly the plain error standard applies in this context and there is no plain error here with respect to these cases. And the rationale for that is that despite the fact that they were not given advance notice of the particular conditions that the court was considering imposing, this court recognizes that the standard conditions have been imposed regularly in many, many... I'm not going to say all, but many, many cases, maybe all cases, most cases, throughout the circuit. And it is not true that there's a surprise feature here. The defendants and their lawyers could definitely anticipate that the court would at least consider the imposition of all of the standard conditions, and I do mean to distinguish the standard conditions from some of the special conditions or the conditions that are crafted by the court for a particular case. I'll tell you why I'm surprised at what you just said, because although perhaps some of these conditions are not unconstitutionally vague, many are totally unrelated to the offense of conviction, so they can't be justified in light of 3553 factors. And, you know, that is a problem. Well, the one response that I would have to that is that it's not necessary that the condition be related to the offense of conviction alone. Some of the conditions are related to just the necessary aspects of supervision. And so it's not true, and this court has held, that it's not necessary that a particular condition relate specifically to an offense as long as it relates to the purposes of supervision and sentencing that is set forth. So, in other words, if someone is a Mormon and has never in this world, nor ever would in this world, take a drink, it's okay to say, you know, no alcohol for you, buster. No. Well, it would certainly not be any kind of deprivation of the Mormon's rights since he wouldn't do it anyway, right? But I understand your point, and I agree with it. I think that's where these changes are being felt, where there's being a more particularized assessment. That's appropriate, but I just wanted to mention that when something may be totally unrelated to the offense of conviction and still be an appropriate condition in order to facilitate supervision, for example, or to facilitate rehabilitation. But you know what's so pernicious about this? In the olden days with parole, okay, parole was the deal. You get off, you get out a little earlier, maybe a lot earlier, but in exchange, you subject yourself to all sorts of conditions. Here, it isn't like that. You get a long sentence, and then you get 30 of these very restrictive interference with your life thrown on top of it. So the effect of all this is just to make sentences more severe. A lot of pesky little provisions and vague and have to deal with a probation officer for the rest of your life. Well, that's obviously there. It makes the criminal justice really kind of savage. It's not enough to spend 20 years in prison. You have to have another 20 years of all this Mickey Mouse stuff, avoiding felon. Well, I would make two points. On one, actually, I'll just be repeating a point that Judge Kaney made, which is that the conditions, what we're talking about now in terms of the standard conditions, those conditions normally are not particularly intrusive, the standard conditions. The special conditions go quite a bit further. But most of the standard conditions are relatively unobtrusive in the defendant's life. He's not getting visits from the probation officer every single day. He's not having to report to the probation officer every day. And these are conditions that have been in place for a long time without objection. Without objection? Without objection, even during the times that the supervised release is going on. You know what I mean? This has not been... The standard conditions really are in a class that's different from the special conditions, not in the sense that they don't need to be justified. They do. We understand that. But they are in a class by themselves. Well, the excessive use of alcohol is not one of the standard conditions? Well, I would say that that is an exception to the rest of the standard conditions for example, remain within the jurisdiction. The defendant in some of these cases has complained about that restriction. Well, that restriction, first of all, can be accepted by the probation officer can make exceptions to that condition where work or other family needs present themselves. But that condition is designed to facilitate supervision. You can't have probation officers needing to travel all around the country to follow their defendant. I mean, it's like communist Russia, right? Well, they are in the jurisdiction. But you're never let out of the surveillance and control of the bureaucracy. Well, I don't know the statistics, Your Honor, but my impression is that the 20-year supervision, life supervision terms that you're talking about are really rare. What we're normally talking about is the three years. Why not just say if you move, you know, give the probation officer your address. Why should he be able to control whether he has to spend the rest of your life in New Orleans District for the rest of your life? What's the point of that? If it were the rest of your life, Your Honor, I would agree with that. Well, a lot of these are for the rest of your life. That depends on who's supervising. Right. We even had a case where the person was sentenced to a life sentence, but he was still given supervised conditions to serve after he died. Right? Right. Now that seems very, I don't know, it seems very unpleasant. Well, it's hatching bats. Who knows what's going on?   unless there are other questions, what I would say is that in, in New Orleans District, there's a lot of people who are working in the New Orleans District. The three cases that you're presented with today are cases in which the standard of conditions are the ones that are focused on and objected to. They were not objected to in the court below, despite the fact that they could easily have been anticipated. And in this case, this court has, in a case like this, this court has held that it is preferable to encourage the expedient of seeking modification rather than expensive appeals and remands and more appeals. If modification, if modification is sought in the district court and is not granted, then the defendant can bring that issue to this court and then the discussion can be more tethered to reality than these discussions tend to be. We are, the need for remand in a case like this is nil, and there is no possibility that the plein air standard could be met here because modification is available to the defendants at any time. Thank you. Okay. Well, thank you very much, Ms. Bonamici. Thank you, Your Honor. Mr. Hillis, do you have anything further? Or Mr. Henderson? Either one? I'd like to begin with the suggestion that there can be no deprivation of rights because modification is easily had. If this court looks at its own case law, it'll see that that's not true. Modification is routinely denied. Hearings need not be had. Findings need not be made. Individuals don't have counsel. The appropriate time to address the conditions is here, as opposed to trying to contest them at a modification without counsel later. I think that is also a problem insofar as the conditions that are suggested to be unintrusive. Individuals who are living under 13 or 30 conditions of supervised release have a burden and it is easily shrugged off when we don't live under it. If we have to file reports all the time, if we are having a party with our friends, and the probation officer is showing up at their house, that is not so good for them. We have an individual who has the right to travel and we say it is too burdensome to try to supervise those people if they want to move someplace to have a better job, but there are probation officers in those places. If they are going there permanently, have you had instances in which leaving the jurisdiction was denied? Yes. Not permanently, but if you are in violation status, you cannot be transferred to another probation office to do that. You have lots of things to violate. You have not filed your report on time last month. You better be careful what you wish for because you may get it, longer sentences, and no conditions of supervised release. That should not be the case. If I am a district judge and going to have to do some of the things we have been talking about here, I am not going to subject my probation department to the kind of things you are talking about. Were sentences shortened in 1984 when supervised release was introduced? I am not certain of that, but I think it should be done. Sometimes individuals have rocky roads with probation officers and there we start to see a laundry list of issues where they have violated this condition and that. It stacks up badly for the individual defendant. I have seen people go in on consecutive terms of imprisonment. We have individuals who have all sorts of violations because of the shortness of the sentence. I have individuals who want to violate supervised release because they don't have additional supervision. It is a surprise for individuals when they show up and get these conditions imposed on them. I think there are probably a lot of defendants who have absolutely no notice of these things. It is also the responsibility of the court. There should be findings. As to one of your inquiries earlier, it should be the government's burden to show why a condition is necessary. It shouldn't be for the probation officer to come in and show a judge this is what is typically imposed. I don't know if a judge has ever reviewed the judiciary policy. If these conditions are to be   them, they should show the factors in the particular case that justify the imposition of the given condition. These things aren't happening here. Again, we have individuals whose sentences are too low to effectively challenge. I don't think they are in the good graces of anybody when they violated any of these conditions. I don't want to see a condition get changed so that a person does not lie to the probation officer. The problem is it suggests an affirmative duty to provide information that is incriminatory with respect to your Fifth Amendment rights. We shouldn't change the condition as written by Congress. We should instead notice the natural problem here. That is, the information should not be used against the individual. Probation can pursue its goals, but the individual client wouldn't be stripped of his constitutional protections. I don't believe I have anything else unless the court has questions of me. Okay. Well, thank you very much, Mr. Hillis. We thank you and Mr. Henderson as the defenders for taking on these cases. Of course, we thank Ms. Garrison and Ms. Bonamici for her efforts on behalf of your client. The court will be having a recess tomorrow.